

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED**
**10/28/2014**

| | | |
|---|---|---|
| IN RE: | § | |
| FREDERICK A. ALLEN, JR. | § | |
| JUDY C. ALLEN | § | |
|     DEBTOR(S) | § | CASE NO.  13-37143 |
| | § | |
| TRI-TEMP REFRIGERATION, INC. | § | |
| | § | |
|     PLAINTIFF(S) | § | ADVERSARY NO.  14-3043 |
| | § | |
| VS. | § | |
| FREDERICK A. ALLEN, JR. | § | |
| JUDY C. ALLEN | § | |
|     DEFENDANT(S) | § | |

## Memorandum Opinion

Before the Court is the complaint of Tri-Temp Refrigeration, Inc., to determine

dischargeability of its debt under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(4). This

Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§157(b) and 1334.

At issue are : (1) whether a state judgment and state court findings of fact and

conclusions of law collaterally estop relitigation of plaintiff's allegations that the

debtors committed fraud or breach of fiduciary duty; (2) whether under federal law

the Texas Construction Trust Fund Act creates a fiduciary duty for a contractor for

the benefit of a subcontractors; (3) whether even assuming the existence of a

fiduciary duty, debtors violated Section 523(a)(4) by committing fraud or defalcation,

following *Bullock v. BankChampaign, N.A.*, 133 S.Ct. 1754 (2013). After trial and consideration of the testimony and demeanor of the witnesses and admitted evidence, the Court concludes that Tri-Temp has failed to bear its burden of proof on all issues. Discharge is ordered for both debtors.

## I. Facts

Fred and Judy Allen are officers of Momentum Contractors, Inc. Frederick Allen, Jr. and Judy Allen filed a chapter 7 bankruptcy petition on November 19, 2013.

On December 22, 2010, Walmart Stores, Inc. contracted with Momentum Contractors, Inc. to act as general contractor to remodel a Sam's Club located at 2000 Westview Blvd, Conroe, Texas 77304, for $2,243,013.00. Additions and deductions to the contract price were caused by changes in the scope of work, and the final contract price increased to $2,391,893.98.[1] Momentum substantially completed the job by June or July 2011, but to satisfy Walmart's punch list and final walk through as well as warranty issues, Momentum continued on the job through the following year.

Momentum's contract with Walmart allocates $699,388.00 to the category "mechanical." Momentum contracted with Tri-Temp Refrigeration, Inc. for $396,000.00, to provide a portion of the mechanical work on the Sam's Club job.

---

[1] Net change orders totaled $148,880.98.

Momentum paid Tri-Temp $320,760.00, as follows:

| DATE | AMOUNT |
|------|--------|
| March 31, 2011 | $178,2000 |
| May 31, 2011 | $ 17,820 |
| June 14, 2011 | $124,740 |

During performance of the job, Momentum submitted various change orders to Wal-Mart for approval. Walmart required Momentum to repeatedly revise the change orders Momentum submitted and withheld payment pending its satisfaction with the submissions. Fred Allen testified that during the year that Momentum continued on the Sam's Club job in order to satisfy Walmart's extensive punch list and warranty issues, he negotiated with Walmart concerning all of the open change order requests to attempt to obtain payment from Walmart. While withholding consent to the change orders for work already completed, Walmart pressured Momentum to accept less in payment than Momentum was obligated to pay its subcontractors for the work already performed. Momentum, in turn, tried to negotiate with its subcontractors for reductions on the sums due under their contracts. Fred Allen testified that for one change order, Walmart paid Momentum only $18,000 for work and services performed by Momentum's subcontractors for which Momentum had to

pay the subcontractors over $60,000.

Fred Allen testified that he tried to negotiate with Tri-Temp about the credits Walmart demanded for Tri-Temp's work, but that "Tri-Temp didn't provide us a lien release. I'm not even sure they provided a bill until we were readdressing this issue. They didn't provide us the breakdown we needed to get things straightened out. And then they were demanding payment and filed suit on us about the same time they gave us the bill." As late as January 24, 2012, Walmart was demanding a credit of $50,911.00 on contract payments due Momentum for mechanical work that Tri-Temp did not perform due to changes to its scope of work, but Tri-Temp would agree to a credit of only $17,674.00.

In an email dated February 8, 2012, Fred Allen informed Walmart employee Colleen Callahan that while unpaid subcontractors existed, Momentum had paid out more on the job than it had received from Walmart. Tri-Temp's counsel questioned Fred Allen concerning his email to Colleen Callahan and whether he intended to pay Momentum's subcontractors on the Sam's Club job:

Q Okay. And you admit in your email that you haven't paid them, right? Is that a yes?

A Yes.

Q And you admit that you intend to pay them, as well as the others discussed in your previous email to her, right? Do you see at the bottom

of the page?

A Yes.

Q Okay. And so at this point in time in February of 2012 you were dealing with multiple subcontractors, not just my client, that were all trying to get paid, right?

A Yes.

Q Okay. And you were assuring WalMart you were going to take care of them, right?

A Yes --

Q Okay.

A -- as soon as we got funded.

Tri-Temp's counsel questioned Fred Allen further concerning his intent to pay

subcontractors:

Q . . . [Y]ou had already received all of the rest of that money from Walmart, but were overextended on the project, right?

A Yes and no.

Q Well, you had paid out more on the project than you anticipated having to pay out, right?

A Walmart didn't pay the full amount of what they were supposed to pay. We reduced the dollar amount in order to get a settlement and get paid so we could get everybody paid and then they didn't pay.

Fred Allen testified that he "wasn't able to get [the amount due from Walmart

to Momentum] resolved until I just finally decided that -- to take a reduction in order

to get immediate payment so that I could pay everybody.  And they got me to agree

to the reductions and then they didn't pay." Fred Allen testified that as of the time of

this trial on July 28, 2014, two years after conclusion of the job, Walmart still had not

paid the final payment due Momentum. Despite Momentum's completing the work

to Walmart's satisfaction, Walmart paid Momentum a total of only $2,183,074.54.

Walmart owes Momentum $208,819.42 that remains unpaid.

The funds paid by Walmart to Momentum Contractors, Inc. were made by

Walmart electronically to an account named "Momentum Contractors Sam's Conroe"

set up by Chase Bank at the request of the Allens for the specific purpose of receiving

Walmart's payments to Momentum Contractors, Inc. for its work on the Sam's Club

project. Unfortunately, in setting up the account, Chase Bank erred by failing to use

the correct corporate identification number for Momentum Contractors, Inc., instead

using the corporate identification number of another business owned by the Allens,

"Momentum Project Controls," a business unrelated to Momentum Contractors, Inc.

By the time the Allens noticed the error in the identification number, Walmart had

already begun to make deposits to the account. Chase's error made it necessary for

the Allens to withdraw every deposit as it was made by Walmart and re-deposit it in

an account owned by Momentum Contractors, Inc. with the correct corporate

identification number. In addition to payments from Walmart, Momentum

Contractors, Inc. deposited funds into its accounts of more than $1,200,000.00, during the relevant time period from non-Walmart sources. Momentum Contractors, Inc. received the following deposits from Walmart and non-Walmart sources on the dates and in the amounts as follows:

| DATE | ACCOUNT | TOTAL | WALMART | NON-WALMART |
|------|---------|-------|---------|-------------|
| Mar-11 | 4877 | 98,425.02[1] | 0.00 | 98,425.02 |
| Mar-11 | 4877 | 609,425.31 | 490,364.04[2] | 119,061.31 |
| Apr-11 | 4877 | 75,399.73 | 0.00 | 75,399.73 |
| May-11 | 1245 | 585,915.05 | 585,915.05[3] | 0.00 |
| May-11 | 4877 | 567,369.42 | 450,214.56[4] | 117,154.86 |
| Jun-11 | 4877 | 40,025.35 | 0.00 | 40,025.35 |
| Jun-11 | 1245 | 400,000.00 | 0.00 | 400,000.00 |
| Jul-11 | 4877 | 136,576.54 | 0.00 | 136,576.54 |
| Jul-11 | 1245 | 309,534.16 | 309,534.16[5] | 0.00 |
| Jul-11 | 1245 | 182,683.88 | 182,683.88[6] | 0.00 |
| Aug-11 | 1245 | 0.00 | 0.00 | 0.00 |
| Aug-11 | 4877 | 122,371.52 | 0.00 | 122,371.52 |
| Sep-11 | 1245 | 8,000.35 | 0.00 | 8,000.35 |
| Sep-11 | 4877 | 106,467.05 | 0.00 | 106,467.05 |
| Sep-11 | 2759 | 136,527.33 | 0.00 | 136,527.33 |
| Oct-11 | 2759 | 155.00 | 0.00 | 155.00 |
| Nov-11 | 2759 | 10,000.00 | 0.00 | 10,000.00 |
| Nov-11 | | 76,984.05 | 76,984.05[7] | 0.00 |
| Dec-11 | 2759 | 28,366.65 | 0.00 | 28,366.65 |
| Mar-12 | | 87,378.83 | 87,378.83[8] | 0.00 |
| TOTALS | | 3,581,605.24 | 2,183,074.57 | 1,398,530.71 |

Momentum Contractors, Inc. paid a total of $ 2,136,080.77, for job specific costs on the Sam's Club job. In addition, during the period it was performing the Sam's Club job, Momentum Contractors, Inc. paid several thousand dollars monthly for overhead office expenses to maintain on-going operations, including payments for a leased copier, telephones, a security service for the office, Federal Express, transportation expenses, waste disposal, payroll taxes, worker's compensation, and a small business loan. Fred Allen testified that he received no salary from the Sam's Club job.

Tri-Temp sued Momentum and the Allens in state court in 2012. Tri-Temp obtained a Final Nunc Pro Tunc Judgment on June 3, 2013, in the amount of $159,973.90, against Momentum and the Allens jointly and severally.

## II. Conclusions of Law

### A. Pre-trial Proceedings

Pretrial Tri-Temp moved for summary judgment on liability contending that the Allens are "collaterally estopped from re-litigating issues of ultimate fact which have been determined by a valid and final judgment issued in the State Court, and the corresponding Findings of Fact and Conclusions of Law" and that "there are no genuine issues of material fact regarding [the Allens'] liability for the claim." In its pretrial statement, Tri-Temp states, "This Court granted Plaintiff's motion for

summary judgment in all respects except as to Defendants' scienter, which shall be the subject of the trial."

However, this Court did not grant summary judgment in favor of Tri-Temp. The Court instead ruled that it will give preclusive effect to the facts stated in the state court's findings of fact 1- 68.[9] Further, the Court ruled that scienter of the Allens would be determined under the Supreme Court's standard announced in *Bullock v. BankChampaign, N.A.*, 133 S.Ct. 1754, 1759-1760 (2013). (Hearing on plaintiff's motion for summary judgment, June 23, 2014.)

## B. Collateral Estoppel

Tri-Temp contends that its judgment debt against the Allens is not dischargeable under 11 U.S.C.§§ 523(a)(2)(A) and 523(a)(4) and that the state court's findings of fact and conclusions of law preclude re-litigation of fraud or breach of fiduciary duty by the Allens. Collateral estoppel applies in nondischargeability proceedings in bankruptcy court. *Grogan v. Garner,* 111 S.Ct. 254 (1991).The preclusive effect of a state judgment is a function of the Full Faith and Credit Clause. *In re Schwager,* 121 F3rd 177, 181 (5th Cir. 1997). Consequently, it is the state's own law which creates the preclusive affect to be applied. *In re Gupta*, 394 F.3d 347, 349- 350 (5th Cir. 2004)(A bankruptcy court may apply collateral estoppel in a dischargeability proceeding to preclude relitigation of state court findings that are

relevant to dischargeability.). The ultimate determination of dischargeability is, however, a federal question. *Id.*

Under Texas law, collateral estoppel may be applied where (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. 394 F.3d at 350, n. 4. Collateral estoppel may apply to subsidiary facts actually litigated and necessarily decided in a prior judicial proceeding, but the recitals and conclusions contained in the state court judgment must be supported by detailed subsidiary facts sufficient as findings to meet the federal test of nondischargeability. *Matter of Shuler*, 722 F.2d 1253, 1256-58 (5th Cir.1984).

Collateral estoppel cannot, however, attach to a non-existent finding. *In re Gupta*, 394 F.3d 347, 349 (5th Cir. 2004). The bankruptcy court must look at the entire record of the state proceeding, not just the judgment, to determine if the issue was actually litigated and was necessary to the decision in the state court. *Matter of Shuler*, 722 F.2d 1253, 1258 (5th Cir. 1984).

The state court made findings of fact and conclusions of law in favor of Tri-Temp and against Momentum Contractors, Inc. and the Allens. At trial in this Court Tri-Temp did not, however, introduce the state court judgment, state court findings

of fact, or state court trial transcript into the evidentiary record. Parts of the state court

record are, however, attached to Tri-Temp's motion for summary judgment or were

otherwise uploaded and appear on the Court's docket sheet. The Court finds that

while the state court's findings of fact are preclusive as to any specific subsidiary

facts stated therein , the state court's findings of fact do not include any factual details

showing the acts committed by the Allens upon which the state court based its

conclusions that the Allens violated the Texas Construction Trust Fund Act.

It is detailed subsidiary facts shown by the state court record that serve to

preclude re-litigation of an issue, not the state court's conclusions of law, especially

when as here, the state court's conclusions consist of the wording of the statute

modified to insert the names of the defendants as violators. The Court finds that the

state court findings of fact and conclusions of law do not show that the Allens

committed any acts that constitute fraud or defalcation in a fiduciary capacity so as

to create a non-dischargeable debt under the Bankruptcy Code.

## C. 11 U.S.C. § 523(a)(2)(A)

Bankruptcy Code § 523(a)(2)(A) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b)
of this title does not discharge an individual debtor from any debt--
. . . .

(2) for money, property, services, or an extension, renewal, or
refinancing of credit, to the extent obtained by--

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

11 U.S.C. § 523(a)(2)(A).

"For a debt to be nondischargeable under section 523(a)(2)(A), the creditor must show (1) that the debtor made a representation; (2) that the debtor knew the representation was false; (3) that the representation was made with the intent to deceive the creditor; (4) that the creditor actually and justifiably relied on the representation; and (5) that the creditor sustained a loss as a proximate result of its reliance." *In re Acosta*, 406 F.3d 367, 372 (5th Cir. 2005). Tri-Temp has presented no evidence that its debt is non-dischargeable under 11 U.S.C. § 523(a)(2)(A).

## D. 11 U.S.C. § 523(a)(4)

Bankruptcy Code § 523(a) (4) provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--

. . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny . . .

11 U.S.C. § 523(a)(4).

### 1. Fiduciary Capacity

Tri-Temp contends the Allens violated the Texas Construction Trust Fund Act. Tri-Temp contends that because its debt is based on a violation of the Texas Construction Trust Fund Act, its judgment is nondischargeable under § 523(a)(4).

The Texas Construction Trust Fund Statute provides:

§ 162.001. Construction Payments and Loan Receipts as Trust Funds

(a) Construction payments are trust funds under this chapter if the payments are made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state.

(b) Loan receipts are trust funds under this chapter if the funds are borrowed by a contractor, subcontractor, or owner or by an officer, director, or agent of a contractor, subcontractor, or owner for the purpose of improving specific real property in this state, and the loan is secured in whole or in part by a lien on the property.

(c) A fee payable to a contractor is not considered trust funds if:

(1) the contractor and property owner have entered into a written construction contract for the improvement of specific real property in this state before the commencement of construction of the improvement and the contract provides for the payment by the owner of the costs of construction and a reasonable fee specified in the contract payable to the contractor; and

(2) the fee is earned as provided by the contract and paid to the contractor or disbursed from a construction account described by Section 162.006, if applicable.

(d) Trust funds paid to a creditor under this chapter are not property or an interest in property of a debtor who is a trustee described by Section 162.002.

Tex. Prop. Code § 162.001.

§ 162.002. Contractors as Trustees

A contractor, subcontractor, or owner or an officer, director, or agent of a contractor, subcontractor, or owner, who receives trust funds or who

has control or direction of trust funds, is a trustee of the trust funds.

Tex. Prop. Code § 162.002.

§ 162.003. Beneficiaries of Trust Funds

(a) An artisan, laborer, mechanic, contractor, subcontractor, or materialman who labors or who furnishes labor or material for the construction or repair of an improvement on specific real property in this state is a beneficiary of any trust funds paid or received in connection with the improvement.

(b) A property owner is a beneficiary of trust funds described by Section 162.001 in connection with a residential construction contract, including funds deposited into a construction account described by Section 162.006.

Tex. Prop. Code § 162.003.

§ 162.005. Definitions

In this chapter:

(1) A trustee acts with "intent to defraud" when the trustee:

(A) retains, uses, disburses, or diverts trust funds with the intent to deprive the beneficiaries of the trust funds;

(B) retains, uses, disburses, or diverts trust funds and fails to establish or maintain a construction account as required by Section 162.006 or fails to establish or maintain an account record for the construction account as required by Section 162.007; or

(c) uses, disburses, or diverts trust funds that were paid to the trustee in reliance on an affidavit furnished by the trustee under Section 53.085 if the affidavit contains false information relating to the trustee's payment of current or past due obligations.

P:\tri temp  kkb 102714.wpd                15

(2) "Current or past due obligations" are those obligations incurred or owed by the trustee for labor or materials furnished in the direct prosecution of the work under the construction contract prior to the receipt of the trust funds and are due and payable by the trustee no later than 30 days following receipt of the trust funds.

(3) "Direct cost" means a cost included under a construction contract that is specific to the construction of the improvement that is the subject of the contract.

(4) "Indirect cost" means a cost included under a construction contract that is not specific to the construction of the improvement that is the subject of the contract.

Tex. Prop. Code § 162.005.

§ 162.031. Misapplication of Trust Funds

(a) A trustee who, intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current or past due obligations incurred by the trustee to the beneficiaries of the trust funds, has misapplied the trust funds.

(b) It is an affirmative defense to prosecution or other action brought under Subsection (a) that the trust funds not paid to the beneficiaries of the trust were used by the trustee to pay the trustee's actual expenses directly related to the construction or repair of the improvement or have been retained by the trustee, after notice to the beneficiary who has made a request for payment, as a result of the trustee's reasonable belief that the beneficiary is not entitled to such funds or have been retained as authorized or required by Chapter 53.

(c) It is also an affirmative defense to prosecution or other action brought under Subsection (a) that the trustee paid the beneficiaries all trust funds which they are entitled to receive no later than 30 days following written notice to the trustee of the filing of a criminal complaint or other notice of a pending criminal investigation.

(d) A trustee who commingles trust funds with other funds in the trustee's possession does not defeat a trust created by this chapter.

Tex. Prop. Code §162.031.

"The scope of the concept of fiduciary under 11 U.S.C. § 523(a)(4) is a question of federal law; however, state law is important in determining whether or not a trust obligation exists." *In re Gupta*, 394 F.3d 347, 350 (5th Cir. 2004). "[T]he concept of fiduciary under § 523(a)(4) is narrower than it is under the general common law." *In re Tran*, 151 F.3d 339, 342 (5th Cir. 1998). Whether a state statute creates a fiduciary relationship under § 523(a)(4) is a matter of federal law in which the federal court must examine the supposed fiduciary relationship created by the state statute to determine whether it possesses the attributes required under § 523(a)(4). *In re Tran*, 151 F.3d at 342-343.

Under § 523(a)(4), "fiduciary" is limited to instances involving (1) express or technical trusts, (2) in which the purported trustee's duties arise independent of any contractual obligation, and (3) in which the trustee's obligations have been imposed prior to, rather than by virtue of, any claimed misappropriation or wrong. *Id.* To meet the requirements of § 523(a)(4), a statutory trust must (1) include a definable res and (2) impose "trust-like" duties. *Id.*

In *In re Nicholas*, 956 F.2d 110 (5th Cir. 1992), the Fifth Circuit assessed the

1987 amendment to Texas Property Code § 162.031(a) that expanded the scienter requirement of the trustee to include one who acts intentionally or knowingly in addition to one who acts with intent to defraud. Nevertheless, the Court held that despite the broader scienter requirement, the act failed to create a fiduciary duty under § 523(a)(4). 956 F.2d at 111. The *Nicholas* court noted that despite broadening the scienter requirement of the trustee, the 1987 amendments also created affirmative defenses to a trustee's liability for misapplication of funds that "carefully refine the scope of coverage." 956 F.2d at 112. The *Nicholas* court held, "We conclude that because no fiduciary duty existed even under the 1987 amendments to the [Texas Construction Trust Fund Act], § 523(a)(4) does not bar the dischargeability of Coburn's debt." 956 F.2d at 111.

Since the Fifth Circuit's ruling in *In re Nicholas*, the Texas Construction Trust Fund Act has been amended, in pertinent part, to add requirements for construction accounts for written contracts to construct improvements to a residential homestead for an amount exceeding $5,000 and to add subsection § 162.031(d), which states, "(d) A trustee who commingles trust funds with other funds in the trustee's possession does not defeat a trust created by this chapter." *See* Tex. Prop. Code §§ 162.005, 162.006, 162.007, and 162.031(d).

In *Matter of Tran*, 151 F.3d 339, 343-344 (5th Cir. 1998), the Fifth Circuit

elaborated on its prior rulings that the Texas Construction Trust Fund Act does not

create the type of fiduciary relationship required under § 523(a)(4):

> In our previous cases, we have not expressly identified the particular "trust-like" duty-or combination of duties-that a state statute must impose to create the specie of fiduciary that meets muster under § 523(a)(4). Nonetheless, one such duty has loomed large-the duty that a trustee refrain from spending trust funds for non-trust purposes. Indeed, on two occasions, the absence of such a requirement has proved determinative. In *[In re] Boyle*, [819 F.2d 583 (5th Cir. 1987)] we examined whether a contractor was a fiduciary under § 523(a)(4) by virtue of the Texas Construction Trust Fund Statute. The version of the that statute then in force specified that funds loaned or paid under a construction contract to finance improvements on particular real property were trust funds, and set forth criminal penalties for a contractor or other trustee who, with the intent to defraud, used those funds without paying fully his obligations to beneficiary. In rejecting the argument that the statute constituted as fiduciaries all persons accepting funds or loans under a construction contract, we stressed that the statute prohibited the expenditure of trust funds for non-trust purposes only if done with fraudulent intent.

> [The construction fund statute] does not prohibit a fund holder from paying, without any fraudulent intent, creditors on one project with surplus funds left over from earlier work and then using funds provided for that later project on still other work. In short, the statute does not create "red," "blue," and "yellow" dollars each of which can only be used for "red," "blue," or "yellow" construction

> We held that, absent such an affirmative requirement, the subject statute did not make fiduciaries out of all contractors for the purposes of § 523(a)(4), but rather made fiduciaries of only those contractors who diverted funds with the intent to defraud.

In *Coburn Company of Beaumont v. Nicholas* [956 F.2d 110 (5th

Cir.1992) ], we were confronted with an amended version of the Texas Construction Fund Statute featured in Boyle. Although the amended statute broadened the scienter requirement to cover trustees who "intentionally or knowingly" spent trust funds for non-trust purposes before fully paying all legitimate obligations, it also provided affirmative defenses that permitted a trustee to spend trust funds for non-trust purposes under certain circumstances. As the amended version of the statute, like its predecessor, did not expressly and totally prohibit such expenditures, we again rejected the argument that the statute elevated every contractor who accepts funds or loans under a construction contract to a § 523(a)(4) fiduciary.

Our discussion of the significance of the absence of a statutory prohibition of spending putative trust funds for non-trust purposes does not suggest the converse, i.e., that the mere inclusion of such a prohibition would alone be sufficient to create a fiduciary relationship under the debt discharge exception. The absence of such a prohibition is telling, though, because without such a requirement, the supposed trustee appears not so much to be responsible for managing a beneficiary's funds on the beneficiary's behalf as to be engaged in a typical agency relationship.

Not only do the Act and the regulations promulgated under it fail to prohibit expressly a ticket sales agent from spending lottery ticket proceeds for non-lottery-i.e., non-trust-purposes; neither do they mandate that the agent must segregate lottery proceeds from his other funds. Clearly, the absence of this latter duty undercuts the argument that the Act seeks to prohibit an agent from spending trust funds for non-trusts purposes without expressly saying so. For, in the absence an express segregation requirement, it would be virtually impossible to monitor even an express spending prohibition, let alone one imposed sub silentio. Therefore, any suggestion that a fiduciary of § 523(a)(4) proportions is somehow conjured up by implication just does not hold water.

*In re Tran*, 151 F.3d 339, 343-345 (5th Cir. 1998) (footnotes omitted.)

The Court finds that Tri-Temp has not demonstrated that the Texas Construction Trust Fund Act imposes sufficient trust-like duties on a contractor to meet the requirements of § 523(a)(4).

Tri-Temp alleges that the Allens controlled Momentum's funds and that Momentum withdrew Walmart's payments from the Chase account into which Walmart electronically deposited the funds and used the money to pay operational expenses that were not expenses incurred specifically for the Sam's Club job. Tri-Temp implies that Momentum was required to maintain a dedicated bank account for the Walmart funds. The Court finds that no dedicated account was required of Momentum under the Texas Construction Trust Fund Act as Tri-Temp has introduced no proof that the Sam's Club is a residential homestead. *See* Tex. Prop. Code §162.006(a) ("A contractor who enters into a written contract with a property owner to construct improvements to a residential homestead for an amount exceeding $5,000 shall deposit the trust funds in a construction account in a financial institution.")

### 2. Defalcation and Intent

Under §523(a)(4), the term "defalcation" requires conduct that the fiduciary knows is improper as well as reckless conduct of the kind set forth in the Model Penal Code if the fiduciary consciously disregards or is willfully blind to a substantial and unjustifiable risk that his conduct will turn out to violate a fiduciary duty. *Bullock v.*

*BankChampaign, N.A.*, 133 S.Ct. 1754, 1759 (2013) (citing ALI, Model Penal Code § 2.02(2)(c), p. 226 (1985).) "That risk 'must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.'"133 S.Ct. 1754 at 1759-1760.

Tri-Temp elicited testimony from the Allens at the trial of the instant matter in an effort to show that they knew it would be improper to do such things as: (1) take funds from one project to pay off another project; (2) misappropriate any funds from a construction project; (3) divert funds that were paid by an owner for the work a subcontractor did to someone else in another project; (4) spend project funds in Las Vegas at the Mirage Hotel; (5) spend project funds to pay one's child's college tuition, the liquor store, the overhead, Sirius radio, and L.A. Fitness, until the subcontractors have been paid for the work for which Momentum had already been paid; (6) divert funds from one project to another project; (7) take any project specific money and spend it in Las Vegas, at the liquor store, or at the gym, or for any of the non-project specific expense; and (8) rob Peter to pay Paul. Tri-Temp contends that those payments constitute misappropriations of trust funds of which it was a beneficiary under the Texas Construction Trust Funds Act, Tex. Prop. Code §162 et.

seq.

The Court finds that the Allens' agreement with Tri-Temps' counsel that such acts would theoretically not be proper is not evidence that the Allens committed any such acts or used any of the Sam's Club job trust funds to commit any such acts. There is no evidence that the Allens committed any of the alleged acts while owing money to subcontractors. The Court finds that the Allens did not knowingly, intentionally and with the intent to defraud, retain or use trust funds related to the Sam's Club project for any expenses not authorized by the Texas Construction Trust Fund Statute. The Court finds that neither Fred Allen nor Judy Allen acted with the scienter required under the *Bullock* standard.

The Court finds that Momentum paid only legitimate operational expenses and job specific expenses from Walmart's payments to Momentum for the Sam's Club job. Payment of operational overhead expenses from project funds does not constitute a violation of the statute. "[G]eneral contractors may use the payments they receive from construction projects to keep those projects going even if, in some instances, the beneficiaries are not paid first." *In re Nicholas*, 956 F.2d at 113.

Further, under § 523(a)(4), the trustee may retain, use or disburse funds to pay the trustee's actual expenses directly related to construction or repair of the improvement regardless of whether such expenses were owed to beneficiaries of the

trust fund and regardless of whether the trustee raised such operational payments as an affirmative defense under the Texas Construction Trust Fund Statute because federal law, although initially requiring the debtor to make a prima facie showing that he is entitled to a discharge, ultimately places the burden on the creditor to prove that the debt falls within the § 523(a)(4) exception. *In re Nicholas*, 956 F.2d at 114; *In re Swor*, 347 Fed .Appx. 113 (5th Cir.2009) ("Texas law does not require trust funds to be kept in separate accounts. Nor must these funds be spent only on the project for which they were received—they may be spent on other projects or on expenses related to general business overhead."); *see also* Op. Tex. Att'y Gen. No. JM–945 (1988) (Under Tex. Prop. Code § 162.031(b), actual expenses directly related to the construction or repair of the improvement include overhead and other expenses which, though not readily traceable to a particular job, are necessary to obtaining or completing the job, so long as such expenses have in fact been incurred.)

The two largest payments of which Tri-Temp complains are $4,322.47 paid to UTSA for the Allen's child's college tuition on May 9, 2011, and a withdrawal of $2,004.99, from an ATM at the Mirage Hotel, in Las Vegas, Nevada, on August 23, 2011. The Court finds that in addition to the deposits of Walmart trust funds in the amounts of $490,364.04 on March 24, 2011, and $585,915.03 on May 6, 2011, Momentum had received deposits from non-Walmart sources totaling $410,040.92

during the period of March through May, 2011. Further, Tri-Temp has offered no evidence that Momentum was in default to any beneficiary of the Walmart funds for current or past due obligations for work performed or materials furnished on the Sam's Club job as of May 9, 2011, the date of the tuition payment to UTSA. Indeed, Tri-Temp's complaint judicially admits and the evidence shows that Momentum paid Tri -Temp timely and in full for all work performed by Tri-Temp through May 31, 2011. The Court finds that the Allens and Momentum used non-trust funds from non-Walmart sources to pay UTSA on May 9, 2011.

Similarly, in the month of August 2011, Momentum received a deposit from non-Walmart sources in the amount of $122,371.52. The Court finds that the $2,004.99 withdrawn at an ATM at the Mirage Hotel, in Las Vegas, Nevada on August 23, 2011, was a withdrawal of non-trust funds from sources other than Walmart. This ATM withdrawal was not a misapplication of Walmart funds. The Court finds that all of the questioned charges, total less than $10,000, and were not paid from Sam's Club project funds deposited to Momentum's accounts totaling over $1,200,000.00, during the relevant time period. The Court concludes that Tri-Temp failed to prove that its debt is not dischargeable under § 523(a)(4). Based on the foregoing, it is

**ORDERED** that any debt owed Tri-Temp by Momentum Contractors, Inc. or

the debtors are individually **DISCHARGED**.

Signed this 28 day of Oct. , 2014 at Houston, Texas.

_____

KAREN K. BROWN
UNITED STATES BANKRUPTCY JUDGE